UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAVIER LABRA, et al.,

     Plaintiffs,

     v.

CAL-WESTERN RECONVEYANCE
CORPORATION, et al.,

     Defendants.
_____/

No. C 09-2537 PJH

**ORDER GRANTING MOTION
TO DISMISS**

    The motion of defendants Aurora Bank FSB ("Aurora Bank") and Aurora Loan Services LLC ("Aurora") for an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing the first amended complaint for failure to state a claim, and motion for an order pursuant to Federal Rule of Civil Procedure 12(f) striking the allegations relating to the prayer for punitive damages came on for hearing before this court on February 24, 2010. Plaintiffs appeared by their counsel Harold Reiland, and Aurora Bank and Aurora appeared by their counsel Michael Wall. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion to dismiss.

**BACKGROUND**

    This action arises out of non-judicial foreclosure proceedings on real property purchased by plaintiffs Javier Labra and Wendy Kassner in San Ramon, California. In

2006, plaintiffs refinanced the property with two loans. The loans were negotiated through broker North Point Financial. The first loan was for $636,000.00, and the second loan was for $119,000.00. Both were secured from Lehman Brothers Bank FSB ("Lehman" – now Aurora Bank).

Each of the loans was secured by a deed of trust in favor of the lender. Both deeds of trust were dated March 15, 2006. Fidelity National Title ("Fidelity") prepared some or all of the documents, and also acted as the trustee. The beneficiary was Mortgage Electronic Registration Systems ("MERS").

Both deeds of trust provide that MERS is the beneficiary; that MERS is acting "as nominee for Lender and Lender's successors and assigns;" and that

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law and custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell this Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

First Deed of Trust, Exh. A to First Amended Complaint; Second Deed of Trust, Exh. A to Complaint.

The closing occurred on March 28, 2006, and the first and second deeds of trust were recorded on that date in the office of the Contra Costa County Recorder, as Document Nos. 2006-0093444-00 and 2006-0093445-00, respectively.

Plaintiffs were unable to make the payments and defaulted on the loan. On December 15, 2008, MERS, as Lehman's nominee/agent, executed a substitution of trustee, in which MERS, as the beneficiary, substituted Cal-Western as the substitute trustee (in place of Fidelity). Substitution of Trustee, Exh. B to Complaint. The Substitution of Trustee was recorded in the officer of the Contra Costa County Recorder on January 26, 2009. Id. A copy of the Substitution of Trustee was mailed prior to or concurrently with the recording. Id.

On December 17, 2008, MERS executed a corporate assignment of deed of trust, pursuant to which MERS "grant[ed], assign[ed], and transfer[red]" to Aurora "all beneficial

interest under" the first deed of trust. Assignment, Complaint, Exh. D. The assignment was recorded in the office of the Contra Costa County Recorder on January 29, 2009. Id.

On December 18, 2008, Cal-Western, as substituted trustee under the deed of trust, executed a notice of default and election to sell under the first deed of trust. Notice of Default, Exh. C to Complaint. The notice of default was recorded in the office of the Contra Costa County Recorder on December 19, 2008. Id.

On March 20, 2009, Cal-Western "as duly appointed trustee under and pursuant to" the first deed of trust, executed a notice of trustee's sale, which was recorded in the office of the Contra Costa County Recorder on March 27, 2009. Notice of Trustee's Sale, Exh. E to Complaint.

Plaintiffs filed the present action in Contra Costa County Superior Court on May 26, 2009, against Cal-Western, Aurora, and MERS, alleging six causes of action: (1) a claim for declaratory relief, seeking a judicial declaration that Cal-Western was not the trustee and did not have the power of sale, or in the alternative, that Cal-Western failed to follow the procedures in Civil Code §§ 2934a(b), 2923.5(b), and 2924b; (2) a claim for declaratory relief, seeking a judicial declaration that the loan could not be foreclosed upon because neither MERS nor Aurora had possession of the original note; (3) a claim for negligence, based on violations of the Real Estate Settlement and Procedures Act ("RESPA") and the Truth in Lending Act ("TILA"), seeking rescission and damages; (4) a claim seeking an order enjoining the foreclosure of the property; (5) a claim for fraud; and (6) a claim for negligent misrepresentation.

On June 8, 2009, MERS removed the action, alleging federal question jurisdiction. Cal-Western and Aurora filed "consent to removal" statements with MERS' notice of removal. On September 17, 2009, plaintiffs and MERS stipulated to a dismissal of MERS without prejudice. The property was sold at a trustee's sale on October 23, 2009.

Aurora filed a motion to dismiss and motion to strike, set for hearing on November 18, 2009. On December 3, 2009, the court issued a written order granting Aurora's motions. The court granted the motion to dismiss the first cause of action, finding that

3

plaintiffs could not maintain a claim premised on the assertion that Cal-Western was not the successor trustee, or on the assertion that Cal-Western had failed to follow the procedures in California Civil Code §§ 2934a(b), 2923.5(b), and 2924(b).

The court dismissed as moot the second cause of action seeking a judicial declaration that the loans cannot be foreclosed upon because neither MERS nor Aurora has possession of the original note, as the property had already been foreclosed upon.

The court dismissed the third cause of action for negligence based on violations of the Real Estate Settlement Procedures Act ("RESPA") and the Truth in Lending Act ("TILA"), based on plaintiffs' concession at the hearing that the RESPA and TILA claims were time-barred.

The court dismissed the fourth cause of action seeking an order enjoining the foreclosure of the property, for the reasons stated with regard to the second cause of action; and dismissed the fifth and sixth causes of action for fraud and negligent misrepresentation, for failure to plead fraud with particularity.

In addition, as to the allegations that defendants had falsely represented to plaintiffs that Aurora Bank was the lender, that North Point would be the only loan broker, and that there would not be any unknown fees at closing, the court found that any claims premised on those assertions were preempted by the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461, et seq., and the regulations promulgated pursuant to that statute by the Office of Thrift Supervision. See 12 C.F.R. § 560.2 (preemption of state laws purporting to impose requirements regarding, terms of credit; loan-related fees; disclosure and advertising; and processing, origination, servicing, sale or purchase of mortgages).

The court granted the motion to strike the claim for punitive damages, with leave to amend to allege facts showing that defendants' conduct was intentional, or that it was malicious.

On December 18, 2009, plaintiffs filed a first amended complaint ("FAC"), alleging nine causes of action, against eight defendants – Cal-Western; MERS; Aurora; Aurora Bank; Stuart Davis; NorthPoint Financial Corporation ("NorthPoint"); Wholesale America

4

Mortgage, Inc. ("Wholesale Mortgage"); and Fidelity.[1]

The gravamen of the FAC is that MERS as the "nominee beneficiary" of Lehman did not have the authority under the deed of trust to substitute Cal-Western as the trustee, and that Cal-Western thus did not have the power to sell the property, and the foreclosure sale was therefore not valid.

The FAC alleges the following causes of action: (1) breach of contract, against MERS, Aurora Bank, Aurora, and Cal-Western; (2) wrongful foreclosure, against MERS, Aurora Bank, Aurora, and Cal-Western; (3) fraud, misrepresentation, and deceit, against Lehman, MERS, Aurora Bank, Aurora, and Cal-Western; (4) negligent fraud, misrepresentation, and deceit, against Lehman, MERS, Aurora Bank, Aurora, and Cal-Western; (5) negligence, for violations of RESPA and TILA, against Aurora Bank and NorthPoint; (6) intentional misrepresentation, against Aurora Bank, Stuart Davis, and NorthPoint; (7) negligence, against Aurora Bank, MERS, and Fidelity; (8) mortgage broker fraud and breach of contract, brought as a claim under Business & Professions § 17200, against NorthPoint, Wholesale Mortgage, and "all cross-defendants;" and (9) unfair business practices, under Business & Professions Code § 17500, "against all cross-defendants." Plaintiffs seek compensatory and punitive damages.

Aurora and Aurora Bank now seek an order dismissing the claims asserted against them, and an order striking the prayer for punitive damages and related allegations.

**DISCUSSION**

A.    Legal Standard

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).

---

[1]  On December 31, 2009, summons was issued as to Aurora Bank, Aurora, Cal-Western, Stuart Davis, Fidelity, MERS, Northpoint, and Wholesale Mortgage. It is possible that Cal-Western, Aurora, and MERS were served with the original complaint and summons while the case was pending in state court. However, after the case was removed, MERS was voluntarily dismissed, and so will need to be served again, along with the other newly-added defendants. There is no indication in the docket that any of those defendants has been served.

Review is limited to the contents of the complaint. <u>Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.</u>, 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8.

Rule 8(a)(2) requires only that the complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are unnecessary – the statement need only give the defendant "fair notice of the claim and the grounds upon which it rests." <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). All allegations of material fact are taken as true. <u>Id.</u> at 94. However, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555 (citations and quotations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." <u>Id.</u>

A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. <u>See id.</u> at 558-59. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S.Ct. 1937, 1950 (2009).

In addition, when resolving a motion to dismiss for failure to state a claim, the court may not generally consider materials outside the pleadings. <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688 (9th Cir. 2001). An exception to this rule is that a court may consider a matter that is properly the subject of judicial notice, such as matters of public record. <u>Id.</u> at 689; <u>see also</u> <u>Mack v. South Bay Beer Distributors, Inc.</u>, 798 F.2d 1279, 1282 (9th Cir. 1986) (on a motion to dismiss, a court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment).

Finally, in actions alleging fraud, "the circumstances constituting fraud or mistake

shall be stated with particularity." Fed. R. Civ. P. 9(b). Under Rule 9(b), the complaint must allege specific facts regarding the fraudulent activity, such as the time, date, place, and content of the alleged fraudulent representation, how or why the representation was false or misleading, and in some cases, the identity of the person engaged in the fraud. In re GlenFed Sec. Litig., 42 F.3d 1541, 1547-49 (9th Cir.1994).

B.     Defendants' Request for Judicial Notice

In connection with their previous motion to dismiss (filed August 7, 2009), defendants moved pursuant to Federal Rule of Evidence 201 for judicial notice of certain documents submitted in support of the motion. Because the court did not address this request for judicial notice at the time of ruling on the prior motion, and because some of the documents attached to the request for judicial notice are relevant to the present motion, the court now considers the request.

Defendants request the court to take judicial notice of the following: (1) a copy of the Notice of Assignment, Sale, or Transfer of Servicing Rights, dated March 15, 2006, pursuant to which Lehman assigned servicing rights on plaintiffs' loans to Aurora; (2) a copy of the Trustee's Deed Upon Sale, dated October 29, 2009, recorded in the office of the Contra Costa County Recorder on November 4, 2009; (3) a copy of the December 3, 2009, order granting defendants' motion to dismiss the complaint; (4) a copy of the Federal Stock Charter for Lehman Brothers Bank; a copy of Office of Thrift Supervision ("OTS") documents identifying Aurora as an operating subsidiary of Lehman; (5) a copy of the Secretary's Certificate certifying the name change from Lehman Brothers Bank FSB to Aurora Bank FSB, dated April 24, 2009; and (6) a copy of the Corporate Assignment of Deed of Trust, recorded in the office of the Contra Costa County Recorder on January 29, 2009.

Federal Rule of Evidence 201(b) provides the criteria for judicially noticed facts: "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably

1  be questioned."

2        With regard to the documents recorded in the Official Records of Contra Costa

3  County, the court takes judicial notice of these documents as they are matters of public

4  record.  See MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986) (A court

5  may take judicial notice of matters of public record outside the pleadings on a motion to

6  dismiss.); Western Fed. Sav. v. Heflin, 797 F.Supp. 790, 792 (N.D. Cal. 1992) (taking

7  judicial notice of documents in a county public record, including deeds of trust).

8        With regard to the OTS documents, the court takes judicial notice of the fact that

9  Aurora was recognized as an operating subsidiary of Lehman.  This information is from an

10 official government website and its accuracy is not reasonably in dispute.  See Denius v.

11 Dunlap, 330 F.3d 919, 926-27 (7th Cir. 2003) (taking judicial notice of information on official

12 government website); Cali v. E. Coast Aviation Servs., Ltd., 178 F.Supp.2d 276, 287 n. 6

13 (E.D.N.Y. 2001) (taking judicial notice of documents from Pennsylvania state agencies and

14 Federal Aviation Administration).

15       With regard to the court's December 3, 2009 order, that document is already part of

16 the official record of this case, and there is no need for it to be judicially noticed.  With

17 regard to the Secretary's certificate noting the change in name from Lehman Brothers Bank

18 FSB to Aurora Bank FSB, the court declines to judicially notice this document, as the

19 information is not a public record.  The court notes, however, that both plaintiffs and

20 defendants refer to Lehman having become Aurora Bank at some point in the recent past.

21 The fact of the change in name does not appear to be disputed.

22 C.    Defendants' Motion

23       The first through fourth (and possibly eighth and ninth) causes of action are asserted

24 against Aurora, and the first through seventh (and possibly eighth and ninth) causes of

25 action are asserted against Aurora Bank.

26       In support of their motion, defendants argue, first, that plaintiffs cannot challenge the

27 already completed foreclosure sale without tendering the indebtedness under California

28 law, and cannot rebut the statutory presumption that the foreclosure sale was valid, and

that for these reason alone, the entire FAC fails; second, that several of plaintiffs' claims concern the origination of their loans, of which Aurora had no part, and which are preempted as against Aurora Bank; third, that plaintiffs cannot state any claim premised on the assertion that MERS did not have the authority to substitute Cal-Western as the trustee, or to assign the note to Aurora; and that Cal-Western therefore did not have the authority to conduct the foreclosure sale; and fourth, that each cause of action fails on independent grounds as well.

        a.      Failure to tender and failure to rebut presumption of valid sale

Defendants contend that plaintiffs lack standing to challenge the foreclosure sale because they failed to tender the amount due on the loan prior to filing the lawsuit, and fail to allege ability to tender. In addition, they assert, plaintiffs cannot rebut the presumption of the valid sale by showing that there were procedural irregularities in the sale.

In opposition, plaintiffs claim that whether they tendered the amount of the loan (or have alleged ability to tender) is irrelevant, because they are seeking damages. They contend that the "restitution" arguments are moot because of the foreclosure sale. In addition, they contend that tender is not required to assert an equitable claim, and that it would be inequitable to require plaintiffs to tender here because the sale was conducted by a party without the power of sale (i.e., a trustee who was not properly substituted).

As for the argument that they cannot rebut the presumption of the valid sale, plaintiffs respond that this argument is improper in a Rule 12(b)(6) motion, which simply tests the adequacy of the claims. In addition, plaintiffs assert, since the substitute trustee (Cal-Western) was not actually the trustee and could not have conducted a foreclosure sale, the sale should be considered void and not valid.

The court finds that the motion must be GRANTED. Plaintiff's failure to tender bars their claim, which seeks to set aside the foreclosure sale. It is settled in California that an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security." Arnolds Mgmt. Corp. v. Eischen, 158 Cal. App. 3d 575, 578 (1984); see also

1    United States Cold Storage v. Great Western Sav. & Loan Ass'n, 165 Cal. App. 3d 1214,

2    1222-23 (1985).

3              b.      Origination-based claims

4          Defendants assert that a majority of the causes of action alleged in the FAC –

5    especially the third (fraud), fourth (negligent fraud), sixth (intentional misrepresentation),

6    seventh (negligence), eighth (§ 17200), and ninth (§ 17500) causes of action – are based

7    on allegations of wrongdoing during the origination of plaintiffs' loans.  Defendants claim

8    that these claims fail as to Aurora, because it was not involved in the origination of plaintiffs'

9    loans (and is merely the loan servicer).  Defendants argue in addition that the claims fail as

10   against both Aurora and Aurora Bank because they are preempted under HOLA.

11         In opposition, plaintiffs assert that the FAC alleges that Aurora Bank – not Aurora –

12   was involved in the loan origination process.  As for the claim of federal preemption,

13   plaintiffs assert that "there are no state laws that have been asserted that can be

14   preempted" and that "[t]his argument has no relevance to the causes of action asserted."

15   Plaintiffs argue that Aurora Bank was not the beneficiary of the deed of trust and did not

16   possess the power of sale, and therefore had no authority to order the trustee, or a

17   wrongfully appointed trustee (Cal-Western) to foreclose on the property.

18         According to plaintiffs, their claims are not related to any of the issues that are

19   preempted by HOLA, as they have not challenged the terms of credit, loan-related fees,

20   disclosure, or advertising, or Aurora Bank's participation in the origination of the loans.

21   Rather, "[t]he crux of its [sic] arguments is that Aurora and/or Aurora Bank had no authority

22   to foreclosure [sic] on the property."

23         "This," according to plaintiffs "is based on the contract and the state law regarding

24   who has the authority to conduct a foreclosure sale."  Plaintiffs assert that foreclosure is not

25   part of the loan origination process and is not part of loan servicing, and that even if

26   origination-based claims or servicing-based claims are preempted, the foreclosure-based

27   claims are not.

28         The claims are pled so generally, that it is not entirely clear which ones relate to

origination of the loans. But insofar as they do, the motion is GRANTED. It is irrelevant that the FAC does not specifically allege that Aurora was involved in origination, as plaintiffs are plainly attempting to hold Aurora liable under origination-based allegations in the third and fourth causes of action.

Moreover, it appears that plaintiffs are to some extent challenging the terms of the loans and the origination of the loans. For example, plaintiffs allege that defendants made certain representations during origination to get plaintiffs to sign the loan documents, see FAC ¶¶ 42, 49, 58-61); and also allege in the seventh, eighth, and ninth causes of action that defendants are liable for providing ambiguous loan documents, see FAC ¶¶ 66-67, 74, 82. As such, those claims are preempted.

c.     Claim re MERS' authority to name substitute trustee

Throughout the SAC, plaintiffs allege that MERS improperly substituted Cal-Western as the trustee, and that Aurora was not authorized to notice the foreclosure sale. Defendants assert that the court should once again reject the claim that only the lender has the right to substitute trustees, and that MERS' substitution of Cal-Western for Fidelity breached the deed of trust. Defendants argue that the court should find that Cal-Western is the properly substituted trustee under the deed of trust, which specifically granted MERS the power to exercise the powers of a beneficiary.

In opposition, plaintiffs assert that the allegation that Cal-Western was not a valid substitute trustee is sufficient under Rule 12(b)(6). They argue that because the deeds of trust provided that the "Lender" might "from time to time appoint a successor trustee to any Trustee appointed" under the deed of trust, by means of a properly executed and recorded instrument; and that this procedure "shall govern to the exclusion of all other provisions of substitution," only the "Lender" – that is, Lehman, not MERS – could appoint a successor trustee. Based on this, plaintiffs contend that MERS was not authorized to appoint a successor trustee, making essentially the same arguments they previously made in support of their motion for preliminary injunction and in opposition to the motion to dismiss the original complaint.

As for plaintiffs' claim that MERS did not have the authority to substitute trustees, and that this issue cannot be determined in a Rule 12(b)(6) motion, the court finds, based on the language in the deeds of trust, which are referenced in the complaint and in the FAC, and copies of which are attached to documents submitted by plaintiffs in this action, that the claim that MERS was not authorized to substitute Cal-Western as the successor trustee is contradicted by the language in the deeds of trust.

The deeds of trust explicitly state that MERS is the nominal beneficiary under the deeds of trust, and provide further that MERS has the right to foreclose and sell the property. In addition, MERS had the right to "exercise any or all of these interests" and to take any action required of a lender. As such, plaintiffs' claim that MERS did not have the authority to substitute Cal-Western as trustee, and that Cal-Western is therefore not a proper trustee, is untenable.

As for the claim that Aurora did not have the power to notice the foreclosure sale, the court notes that MERS assigned its beneficial interest under the deed of trust to Aurora in January 2009, thereby giving Aurora the power to authorize foreclosure of the property. See Defs' RJN, Exh. 6. Under California Civil Code § 2924(a)(1), the foreclosure process may be initiated by the "trustee, mortgagee, or beneficiary, or any of their authorized agents."

In addition, however, it is unnecessary for the court to find, as a matter of law, that MERS had the authority to substitute Cal-Western as trustee, or that Cal-Western is a proper trustee, or that Aurora had the power to authorize the foreclosure process, because (as stated below) the FAC fails to plead sufficient facts to support any of plaintiffs' individual causes of action.

        d.     Individual claims

            I.     First cause of action for breach of contract

In the first cause of action, plaintiffs allege that MERS, Aurora Bank, Aurora, and Cal-Western breached the deed of trust by failing to have the lender (Lehman, or Aurora Bank) execute the substitution of trustee.

12

1     Defendants assert that this cause of action fails because plaintiffs cannot plead facts

2   sufficient to support the elements of a claim of breach of contract.  In particular, defendants

3   contend that plaintiffs cannot allege that they performed the contract or have an excuse for

4   non-performance, as they defaulted under the loan agreement; and that plaintiffs cannot

5   plead damages, as the foreclosure was the inevitable result of their default.

6     In opposition, plaintiffs assert that defendants' arguments are incorrect "because

7   they base them on a breach of the 'Loan' and not the Deed of Trust as alleged in the FAC."

8   Plaintiffs claim they have satisfied the requirements of performance, and have alleged

9   damages in the sum of $650,000.

10     The court finds that the motion must be GRANTED.  Plaintiffs cannot plead a breach

11   of contract claim because they admittedly did not fulfill their obligations under the deeds of

12   trust – which required plaintiffs to "promptly pay when due the principal and interest

13   indebtedness evidenced by the Note and late charges as provided in the Note" – and

14   because their own breach caused their alleged damages.

15                         ii.     Second cause of action for wrongful foreclosure

16     In the second cause of action, plaintiffs allege that Lehman, MERS, Aurora, and

17   Aurora Bank owed a duty to plaintiffs to comply with the terms of the deed of trust. They

18   assert that MERS had no authority to appoint Cal-Western as the substitute trustee; that

19   MERS did not have the power of sale and therefore the assignment to Aurora as the

20   Nominee did not transfer the power of sale to Aurora (which authorized Cal-Western to

21   conduct the sale); that Aurora failed to provide notice of the substitute trustee to plaintiffs

22   pursuant to the "California Code;"[2] that MERS did not own the note, and therefore the

23   transfer to Aurora did not assign the benefits of the note; that Aurora negligently instructed

24   Cal-Western to foreclose; and that Cal-Western negligently sold the property without power

25   of sale as an invalid substitute trustee.

26     Defendants contend that this cause of action should be dismissed because it is

27   _____

28        [2]   This is presumably a reference to the California Civil Code, and the claim is
    substantially similar to one rejected by the court in the December 3, 2009 order.

simply another iteration of the allegations in the first cause of action for breach of contract – that MERS did not have the power to substitute trustees or initiate foreclosure proceedings – and fails for the same reasons.

The court finds that the motion must be GRANTED as to this cause of action, for the reasons stated above with regard to the first cause of action.  Moreover, as noted above, failure to tender bars any attempt to set aside a foreclosure sale.  That is, plaintiffs cannot state a claim for "wrongful foreclosure" because they have not alleged an ability to tender the loan proceeds.  An action to set aside a foreclosure sale, unaccompanied by an offer to redeem, does not state a cognizable cause of action.  See Karlsen v. American Sav. & Loan Assn., 15 Cal. App. 3d 112, 117 (1971).  "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust."  Id.

A defaulted borrower is "required to allege tender of the amount of [the lender's] secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure."  Abdallah v. United Savings Bank, 43 Cal. App. 4th 1101, 1109 (1996); see also FPCI RE-HAB 01 v. E & G Investments, Ltd., 207 Cal. App.3d 1018, 1021 (1989).  "The absence of an allegation of ability to tender amounts owed dooms a purported wrongful foreclosure claim."  Saldate v. Wilshire Credit Corp., __ F.R.D. __, 2010 WL 582074 at *14 (E.D. Cal., Feb. 12, 2010).

     iii.  Third and fourth causes of action for fraud and "negligent" fraud

In the third and fourth causes of action, plaintiffs allege that Lehman, MERS, Aurora Bank, Aurora, Cal-Western, and Fidelity falsely stated they had the power of sale and authority to foreclose on the property; that these defendants knew this representation to be untrue because they drafted the deed of trust and made the assignments to each other; that they induced reliance by the plaintiffs; that plaintiffs justifiably relied on the defendants' representations and the deed of trust; and that as a result of this misrepresentation, plaintiffs' property was improperly sold and plaintiffs were damaged thereby.  Defendants

14

1    argue that these causes of action must be dismissed for failure to plead fraud with

2    particularity.

3          In opposition, plaintiffs assert that their allegations are sufficient to state a claim.

4    They contend that because Aurora, Aurora Bank, MERS, and Cal-Western are all "faceless

5    companies," the identities of the persons who took the alleged actions are unknown to

6    plaintiffs.  On the other hand, they assert, "those parties know who the persons are that

7    asserted the powers of foreclosure and ordered the assignment but they directed that the

8    paperwork be completed evidencing the fraudulent act."  Thus, with this "superior

9    knowledge" and "full information of the claims asserted," defendants (according to plaintiffs)

10   "have all the facts necessary to defend" against plaintiffs' claims.

11         The court finds that the motion must be GRANTED as to the fraud claims.  Under

12   California law, the elements of common law fraud are "misrepresentation, knowledge of its

13   falsity, intent to defraud, justifiable reliance, and resulting damages."  Gil v. Bank of Am.,

14   Nat'l Ass'n, 138 Cal. App. 4th 1371, 1381 (2006).  A court may dismiss a claim grounded in

15   fraud when its allegations fail to satisfy Rule 9(b)'s heightened pleading requirements.

16   Less v. Ceiba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003).  This means that

17   plaintiff "must state with particularity the circumstances constituting fraud . . ." Fed. R. Civ.

18   P. 9(b).  In other words, plaintiff must include "the who, what, when, where, and how" of the

19   fraud.  Less, 317 F.3d at 1106 (citations omitted).

20         As to multiple defendants, "Rule 9(b) does not allow a complaint to merely lump

21   multiple defendants together but require[s] plaintiffs to differentiate their allegations when

22   suing more than one defendant . . . and inform each defendant separately of the allegations

23   surrounding his alleged participation in the fraud."  Swartz v. KPMG LLP, 476 F.3d 756,

24   765-66 (9th Cir. 2007); see also Pegasus Holdings v. Veterinary Centers of America, Inc.,

25   38 F.Supp.2d 1158, 1163 (C.D. Cal. 1998) (where an action involves multiple defendants, a

26   plaintiff "must provide each and every defendant with enough information to enable them 'to

27   know what misrepresentations are attributable to them and what fraudulent conduct they

28   are charged with.'").

The purpose of Rule 9(b) is to ensure that defendants accused of the conduct specified have adequate notice of what they are alleged to have done, so that they may defend against the accusations. Concha v. London, 62 F.3d 1493, 1502 (9th Cir. 1995). "Without such specificity, defendants in these cases would be put to an unfair advantage, since at the early stages of the proceedings they could do no more than generally deny any wrongdoing." Id. (citing Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985)).

Plaintiff's fraud claim fails because it does not satisfy the heightened pleading requirements of Rule 9(b). With regard to plaintiffs' contention that they cannot be expected to know the names of people involved in the alleged fraud, the court notes that the FAC does not even specify which defendants are alleged to have engaged in which action, or whether the representations were made orally or in writing, or when they were made or by whom. Plaintiffs cannot evade Rule 9(b)'s requirements of Rule 9(b) by claiming that the defendants are "faceless companies."

The court finds that plaintiff's allegations are insufficient to satisfy the purpose of Rule 9(b), which is to ensure that defendants accused of the conduct specified have adequate notice of what they are alleged to have done, so that they may defend against the accusations. Moreover, as the foreclosure was the inevitable result of plaintiffs' default, and they have not alleged an ability to tender the amount due, they cannot claim to have been damaged.

iv. Fifth cause of action for negligence for violations of TILA and RESPA

In the fifth cause of action, plaintiffs allege that Aurora Bank and Northpoint violated TILA and RESPA by failing to complete certain documents; by failing to disclose a fee to be paid to Lehman; by failing to disclose broker fees to be paid to an undisclosed broker – Wholesale Mortgage; and by failing to identify Lehman as the lender.

Defendants argue that these claims are time-barred, and note that plaintiffs' counsel expressly conceded at the November 18, 2009 hearing that they plaintiffs did not have any TILA or RESPA claims and would not be bringing any in their amended complaint.

1    The court finds that the motion must be GRANTED as to this cause of action.  As the

2    court previously ruled, the TILA and RESPA claims are time-barred.

3                              v.    Sixth cause of action for intentional misrepresentation

4        In the sixth cause of action, plaintiffs allege that Stuart Davis, NorthPoint, and Aurora

5    Bank represented that Aurora Bank was the lender, but then "changed" the lender to

6    Lehman at the closing; and that these defendants falsely represented to plaintiffs that

7    NorthPoint would be the only broker, and that there would not be any unknown fees at

8    closing.

9        As with the above claims, defendants assert that the claim for intentional

10   misrepresentation fails because it concerns origination-related conduct, that is preempted

11   by federal law when alleged against Aurora Bank; and because it fails under Rule 9(b) as it

12   is not pled with specificity.  Defendants also note that when the court addressed the nearly

13   identical claim in the original complaint, the court granted the motion to dismiss on the

14   basis that plaintiffs had failed to plead fraud with particularity, and also on the basis that the

15   claims are preempted by HOLA.

16       In opposition, plaintiffs argue, as with regard to the third and fourth causes of action,

17   that they have adequately alleged a claim for misrepresentation, and that defendants have

18   all the facts in their possession.

19       The court finds that the motion must be GRANTED.  The claim relates to loan

20   origination, and is therefore preempted under HOLA.  In addition, plaintiffs have not pled

21   this claim with specificity, as required by Rule 9(b).

22                             vi.    Seventh cause of action for negligence

23       In the seventh cause of action, plaintiffs allege that Aurora Bank, MERS, and Fidelity

24   provided and/or drafted the loan documents, including the deed of trust; that they owed a

25   duty to plaintiffs not to provide misleading or ambiguous terms; and that they breached this

26   duty by drafting a deed of trust that did not clearly set forth the authority and powers of

27   MERS, and by requiring plaintiffs to sign it, and also by "allowing MERS to change its

28   status as a mere title holder, to a nominee to a nominee beneficiary to a beneficiary with

17

1    limited rights."

2         Defendants assert that this cause of action fails as against Aurora Bank because

3    this is an origination-based claim, and is preempted under HOLA.  They also assert that

4    plaintiffs cannot plead a cause of action for negligence against Aurora Bank, as a financial

5    institution does not owe a borrower a duty of care, let alone a "negligence duty."  In

6    addition, they contend that plaintiffs cannot plead the damages element because the

7    allegedly ambiguous terms of the loan agreement did not cause plaintiffs' default, and so

8    could not have led to the foreclosure of the property.

9         In opposition, plaintiffs concede that there is no duty owed to plaintiff by Aurora or

10   Aurora Bank in the loan creation.  However, plaintiffs do contend that they can make out a

11   claim of negligence based on Aurora's or Aurora Bank's ordering/permitting Cal-Western to

12   foreclose on the property.  Plaintiffs seek leave to amend to assert such a claim.

13        The court finds that the motion must be GRANTED, for the reasons argued by

14   defendants.  Plaintiffs cannot state a claim for negligence against Aurora Bank, as a

15   financial institution does not owe a borrower a duty of care, let alone a "negligence duty."

16   See Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal. App. 3d 1089, 1096 (1991).

17   Lenders and loan servicers owe no duty to a borrower other than as expressly agreed to in

18   the promissory note, deed of trust, and foreclosure statutes.  See Huerta v. Ocwen Loan

19   Servicing, Inc., 2010 WL 728223 at *4 (N.D. Cal., March 1, 2010).

20                      vii.    Eighth and ninth causes of action under § 17200 and

21                              § 17500

22        In the eighth (§ 17200) and ninth (§ 17500) causes of action, plaintiffs allege that

23   Lehman, Aurora, Aurora Bank, MERS, Fidelity, and Cal-Western together represented that

24   Cal-Western had the authority to sell the property at a trustee sale pursuant to the deed of

25   trust, and that they had complied with all terms of the deed of trust and California

26   foreclosure law.  They assert that despite this, Lehman as the lender was the only party

27   authorized to substitute the trustee, that MERS did not possess the power of sale to

28   transfer to Aurora, and that Aurora did not have the power to authorize Cal-Western to sell

1  the property.

2      Plaintiffs also allege that Lehman, Aurora Bank, and MERS separated the deed of

3  trust from the note, thereby making the deed of trust unenforceable, and that MERS

4  changed its status as a nominee, nominee beneficiary, and beneficiary to suit the needs of

5  a legal defense despite executing an agreement where "they" (MERS?) state in the deed of

6  trust that "they" only hold legal title to the deed of trust. Plaintiffs claim that these acts were

7  fraudulent and unfair, and that they violated § 17200 and § 17500.

8      Defendants contend that these causes of action fail because they are based on

9  plaintiffs' other claims, all of which fail. Moreover, they assert, the claims are not

10 adequately pled, as the facts are not pled with particularity (no dates, persons, or specific

11 wrongdoing by Aurora or Aurora Bank) identified. Finally, they contend that to the extent

12 that the claims relate to origination or servicing activities, they are preempted by HOLA.

13     In opposition, plaintiffs argue that they have alleged facts sufficient to show that

14 Aurora Bank, Aurora, and Cal-Western did not have the authority to conduct a foreclosure

15 of the property. They claim that "these facts" along with "all of the other allegations in the

16 complaint" are sufficient to state a claim under the Unfair Competition Law ("UCL"). In

17 addition, they assert, "ordering a foreclosure by an authorized trustee [perhaps plaintiffs

18 mean 'unauthorized trustee'], is an unfair business practice, that is exactly the type of case

19 that should be reviewed under the UCL statutes." They claim that "[t]he claim is fact

20 intensive and should not be addressed at this point in the case."

21     The court finds that the motion must be GRANTED. To state a claim for unfair

22 competition pursuant to §17200, a plaintiff must allege that a defendant engaged in an

23 "unlawful, unfair, or fraudulent business act or practice" or in "unfair, deceptive, untrue or

24 misleading advertising." Cal. Bus. & Prof. Code § 17200. Because the statute is written in

25 the disjunctive, it applies separately to business practices that are (1) unlawful, (2) unfair, or

26 (3) fraudulent. See Pastoria v. Nationwide Ins., 112 Cal. App. 4th 1490, 1496 (2003).

27 The UCL incorporates other laws and treats violations of those laws as "unlawful" business

28 practices independently actionable under state law. Chabner v. United Omaha Life Ins.

Co., 225 F.3d 1042, 1048 (9th Cir. 2000). Violation of almost any federal, state, or local law may serve as the basis for a UCL claim. Saunders v. Superior Court, 27 Cal. App. 4th 832, 838-39 (1994). Where a plaintiff cannot state a claim under the "borrowed" law, he cannot state a UCL claim either. See, e.g., Smith v. State Farm Mutual Automobile Ins. Co., 93 Cal. App. 4th 700, 718 (2001); Ingels v. Westwood One Broadcasting Services, Inc., 129 Cal. App. 4th 1050, 1060 (2005) ("A defendant cannot be liable under § 17200 for committing unlawful business practices without having violated another law.") (quotation omitted).

A UCL claim predicated on "unfair" business practices may be grounded upon a violation of a statute, see Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir. 1995), or be a "standalone" claim based on an alleged act that "violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." McKell v. Wash. Mut., Inc., 142 Cal. App. 4th 1457, 1473 (2006); see also Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999) ("[A] practice may be deemed unfair even if not specifically proscribed by some other law.").

A plaintiff alleging "unfair" business practices "must state with reasonable particularity the facts supporting the statutory elements of the violation." Silicon Knights, Inc. v. Crystal Dynamics, Inc., 983 F.Supp. 1303, 1316 (N.D. Cal. 1997) (quoting Khoury v. Maly's of California, 14 Cal. App. 4th 612, 619 (1993)). The purpose of California's UCL is "to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." Kasky v. Nike, Inc., 27 Cal. 4th 939, 949 (2002).

Finally, to the extent that a plaintiff's UCL claim is based upon purported "fraudulent" conduct of any defendant, plaintiff must allege fraud with "reasonable particularity" and must state the who, what, where, and when of such conduct. See Less v. Ceiba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003)

Under § 17500, it is unlawful for any company or employee thereof to make or disseminate any statement concerning real or personal property or professional services,

1   which is known, or which by the exercise of reasonable care should be known, to be untrue

2   or misleading.  Cal. Bus. & Prof. Code  § 17500.

3       To state a cause of action under consumer protection statutes designed to protect

4   the public from misleading or deceptive advertising, the plaintiff must demonstrate that

5   members of the public are likely to be deceived.  Wayne v. Staples, Inc., 135 Cal. App. 4th

6   466, 484 (2006).  Although fraud is not an essential element of a claim under § 17500, if

7   the primary underlying wrong that plaintiff is alleging is based on fraud, the allegations of

8   fraudulent conduct alleged in support of plaintiff's § 17500 claim must satisfy the

9   heightened pleading requirements of Rule 9(b).  See Less, 317 F.3d at 1105.

10      Here, with regard to the "unlawful" prong of the § 17200 claim, the SAC does not

11  allege an actionable violation of any law.  With regard to the "unfair" prong, the SAC does

12  not plead the supporting facts with reasonable particularity, and does not allege any

13  actionable conduct that is immoral, unethical, oppressive, or unscrupulous.  With regard to

14  the "fraudulent" prong, the SAC fails to allege the who, what, where, and when of any

15  purported fraudulent conduct attributable to defendants.  With regard to the § 17500 claim,

16  the SAC does not plead any facts showing deceptive advertising.

17      Accordingly, the court finds that the SAC fails to state a claim under either § 17200

18  or § 17500.  In addition, both causes of action are premised on the underlying claim that

19  Cal-Western was not the proper trustee, and that Aurora and Cal-Western did not have the

20  authority to foreclose on the property.  For the reasons stated above, this underlying claim

21  lacks merit.  Moreover, to the extent that these claims are based on defendants' origination

22  or servicing activities, they are preempted under HOLA.

23                              **CONCLUSION**

24      In accordance with the foregoing, the motion of defendants Aurora and Aurora Bank

25  to dismiss the claims asserted against them is GRANTED.  As the court has previously

26  granted leave to amend, only to have plaintiffs re-allege the same failed claims, and as the

27  court now finds that further amendment would be futile, the dismissal is WITH PREJUDICE.

28  As no claims remain against Aurora or Aurora Bank, the motion to strike the prayer for

punitive damages is moot.

The case management conference scheduled for March 18, 2010 at 2:00 p.m. is CONTINUED to April 22, 2010 at 2:00 p.m., a date after the 120-day deadline for service of the amended complaint and summons on the remaining defendants.

**IT IS SO ORDERED.**

Dated: March 11, 2010

_____
PHYLLIS J. HAMILTON
United States District Judge